# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:10CR336 |
| Plaintiff, ) | |
| ) | |
| vs. ) | FINDINGS AND |
| ) | |
| CLAUDIA GOMEZ-DE LA CRUZ, ) | RECOMMENDATION |
| ) | |
| Defendant. ) | |

This matter is before the court on the motion to suppress filed by defendant Claudia Gomez-De La Cruz (Gomez-De La Cruz) (Filing No. 23). Gomez-De La Cruz is charged in the Indictment with the use of identification documents knowing such documents were not lawfully issued for her use for the purpose of satisfying a requirement of an employment verification system (Count I), in violation of 18 U.S.C. § 1546(b); the false claim of United States citizenship (Count II), in violation of 18 U.S.C. § 911; and the false representation of a Social Security number not assigned to her with the intent to deceive (Count III), in violation of 42 U.S.C. § 408(a)(7)(B). Gomez-De La Cruz seeks to suppress all evidence and statements made by Gomez-De La Cruz to Immigration and Customs Enforcement (ICE) agents on September 7, 2010, in Omaha, Nebraska.

An evidentiary hearing was held on Gomez-De La Cruz's motion on December 8, 2010. Gomez-De La Cruz was present for the hearing along with her counsel, Assistant Federal Public Defender Richard H. McWilliams. The United States was represented by Assistant U.S. Attorney Michael P. Norris. Laura Garcia-Hein, a certified Spanish language interpreter, served as the interpreter for the hearing. During the hearing, the court heard the testimony of ICE Special Agents Andrew Stewart (Agent Stewart) and Reynaldo Hernandez (Agent Hernandez). The court received into evidence the following Exhibits: Exhibit 1 - Pre-Miranda Questions Worksheet; Exhibit 2 - Federal Trade Commission (FTC) Complaint; and Exhibit 3 - Copy of Mexican Consulate ID. A transcript (TR.) of the hearing was prepared and filed on December 14, 2010 (Filing No. 34).

**FINDINGS OF FACT**

The Omaha ICE office conducted an audit of I-9 forms as they related to Omaha Steaks in Omaha, Nebraska (TR. 5-6). One of the cases involved identity theft complaints to the Federal Trade Commission (FTC) in 2005 and 2006, on behalf of Amelia Cartagena that her Social Security number was being used by someone in Omaha, Nebraska (TR. 4-5; Exhibit 2). Through the I-9 audit, the auditor identified fourteen individuals employed at Omaha Steaks who may be the subject of identity theft complaints (TR. 7). One of the names was Amelia Cartagena (TR. 5).

On September 7, 2010, approximately fifteen ICE agents dressed in normal casual business attire traveled to the Omaha Steaks location (TR. 7, 13). ICE had requested Omaha Steaks to direct the fourteen individuals to a training room at Omaha Steaks so that they would be in the training room when the ICE agents arrived (TR. 7). ICE support staff had prepackaged folders for each of the fourteen names for the agents to use during this contact (TR. 8). Upon arrival in the training room, Agent Stewart grabbed the folder of Amelia Cartagena (TR. 8). Agent Stewart called out "Who's Amelia Cartagena?" (TR. 8). The defendant, Gomez-De La Cruz, raised her hand and Agent Stewart sat down next to her (TR. 8). Agent Stewart asked Gomez-De La Cruz her name (TR. 9). She replied "Amelia Cartagena" (TR. 9). Agent Stewart then asked her where she was born and she responded "Puerto Rico" (TR. 9). Agent Stewart did not continue because there was another ICE agent from Puerto Rico, Agent Hernandez, who could better question Gomez-De La Cruz as to her home country (TR. 9). Agent Hernandez was fluent in Spanish and was working as a floater to assist other agents in their interviews if there was a need (TR. 9). Agent Stewart turned around and asked Agent Hernandez if he could ask Gomez-De La Cruz some questions because she said she was from Puerto Rico (TR. 10).

Agent Hernandez then engaged Gomez-De La Cruz in conversation in Spanish by asking her, "Oh, you're from Puerto Rico?," and told her he was also from Puerto Rico (TR. 21). Agent Hernandez asked Gomez-De La Cruz what part of Puerto Rico she was from and Gomez-De La Cruz told him a town in Puerto Rico with which Agent Hernandez was familiar (TR. 21-22). Agent Hernandez asked Gomez-De La Cruz what part of the town she was from, in an attempt to determine what barrio she claimed (TR. 22). Gomez- De

La Cruz simply stared at Agent Hernandez, whereupon Agent Hernandez told Agent Stewart "We have to follow up" (TR. 22). Gomez-De La Cruz was then detained for transportation to the ICE Processing Unit to determine her immigration status and for fingerprinting (TR. 22).

As the session at Omaha Steaks was wrapping up, Agent Hernandez placed Gomez-De La Cruz in his van with some other female suspects for transportation to the ICE Processing Unit (TR. 24). As the van was getting ready to leave, Agent Hernandez was contacted on his cell phone by another ICE Agent, Agent Anton, and told that one of the females named Amelia wanted to get her identification out of her vehicle in the parking lot (TR. 25). Agent Hernandez did a U-turn in the parking lot (TR. 25). Another ICE Agent, Agent Sells, asked who was Amelia and Gomez-De La Cruz responded (TR. 25). Agent Hernandez asked Gomez-De La Cruz where her car was and where the document was in the car (TR. 26). A female officer retrieved the car keys from Gomez-De La Cruz and Gomez-De La Cruz told Agent Hernandez where to stop the van (TR. 35). Agent Hernandez got the keys and Gomez-De La Cruz told him to where to find the ID in the car (TR. 35). Agent Hernandez stopped the van, got out, and obtained the ID from the car where Gomez-De La Cruz said it would be located (TR. 26). Gomez-De La Cruz told Agent Hernandez to be sure and lock the car, which he did (TR. 26). The ID was a Mexican Consulate ID card in the name of Claudia Alejandra Gomez-De La Cruz (TR. 27; Exhibit 3).

The agents transported Gomez-De La Cruz to the ICE Processing Unit (TR. 28). The agents fingerprinted Gomez-De La Cruz and advised her of her **Miranda**[1] rights, whereupon she invoked her right to remain silent (TR. 28).

## LEGAL ANALYSIS

Gomez-De La Cruz asserts the 2005 and 2006 FTC identity theft complaints were stale by the time of the I-9 audit and could not serve as a reasonable basis for Gomez-De La Cruz's detention on September 7, 2010. Gomez-De La Cruz further asserts she should

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

have been advised of her *Miranda* rights as soon as the ICE agents entered the training room at Omaha Steaks on September 7, 2010. Consequently, Gomez-De La Cruz asserts all evidence including her identity, her fingerprints, and the Mexican Consulate ID card obtained on September 7, 2010, should be suppressed.

The government argues that the encounter between Gomez-De La Cruz and the ICE agents was an investigative detention supported by a reasonable articulable suspicion of criminal activity. Furthermore, the government argues the request for basic identification or biographical information is not interrogation requiring *Miranda* warnings. The government argues Gomez-De La Cruz's immigration arrest was lawful and obtaining the Mexican Consulate ID card was done by Gomez-De La Cruz's consent because she requested ICE Agents retrieve the ID card from her car. Once Gomez-De La Cruz was detained and transported to the ICE offices, the agents took Gomez-De La Cruz's fingerprints as part of their booking routine.

"A request for routine information necessary for basic identification purposes is not interrogation under *Miranda*, even if the information turns out to be incriminating." *United States v. Ochoa-Gonzalez*, 598 F.3d 1033, 1038 (8th Cir. 2010). The fact that certain employees were directed to the training room by other Omaha Steaks' management at the request of the ICE agents did not amount to a seizure of those individuals by ICE agents. **See** *Immigration & Naturalization Serv. v. Delgado*, 466 U.S. 210, 220-21 (1984). Furthermore, the ICE agents had lawful authority to interrogate any suspected alien as to that alien's right to be in the United States. **See** 8 U.S.C. § 1357(a)(1); *Immigration & Naturalization Serv. v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984). Accordingly, Agent Stewart's and Agent Hernandez's inquiry of Gomez-De La Cruz as to the pre-*Miranda* questions (Exhibit 102) was entirely proper.

With the notice that someone was using Amelia Cartagena's name and Social Security number in Omaha from the FTC complaint, updated by the ICE I-9 audit in May 2010, Agent Stewart had probable cause to administratively arrest Gomez-De La Cruz when she gave Amelia Cartagena's name and was unable or unwilling to identify the barrio she was from in the Puerto Rican town she claimed. These circumstances provided an objective basis to believe Gomez-De La Cruz had violated the immigration laws. As such,

Gomez-De La Cruz's arrest and the search of her person incident to that arrest were lawful under the Fourth Amendment. **See** *United States v. Torres-Lona*, 491 F.3d 750 (8th Cir. 2007); *United States v. Robinson*, 414 U.S. 218, 235 (1973).

Gomez-De La Cruz was advised of her rights in Spanish, pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), when she was processed at the ICE district office. Gomez-De La Cruz invoked her rights and declined to be interrogated. However, **Miranda** warnings are not required for routine booking questions or gathering biographical information and fingerprints. **See** *Ochoa-Gonzalez*, 598 F.3d at 1038.

Furthermore, Gomez-De La Cruz voluntarily obtained her ID card, with the assistance of the agents, prior to leaving Omaha Steaks. Gomez-De La Cruz's conduct by requesting from the agents, without prompting by the agents, that they retrieve the ID card is evidence of her consent. "A consensual search does not violate the Fourth Amendment if the consent was voluntarily given without coercion." *United States v. Meza-Gonzalez*, 394 F.3d 587, 592 (8th Cir. 2005). The Fourth Amendment test for valid consent to search is that the consent be voluntary, and such "[v]oluntariness is a question of fact to be determined from all the circumstances." *Ohio v. Robinette,* 519 U.S. 33, 40 (1996); **see** *United States v. Comstock*, 531 F.3d 667, 676-77 (8th Cir. 2008) (listing factors). Gomez-De La Cruz's conduct cannot be construed as mere acquiescence to a claim of lawful authority because the agents did not previously request or attempt to locate the ID card. **See** *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968) (the government's "burden [of proving voluntariness] cannot be discharged by showing no more than acquiescence to a claim of lawful authority."). In fact, Gomez-De La Cruz guided the agents to her vehicle and gave specific instructions about where to find the ID card, implying to the agents that she had actual or apparent authority to consent. **See** *United States v. Williams*, 521 F.3d 902, 906 (8th Cir. 2008).

Gomez-De La Cruz's motion to suppress should be denied.

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

Claudia Gomez-De La Cruz's motion to suppress (Filing No. 23) be denied.

## ADMONITION

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 21st day of January, 2011.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.